IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 DEC 29 AM 9: 48

RHONDA L. UNDERWOOD,    )

    PLAINTIFF,    )

VS.    )    CV99-H-1276-S

MG BROADCASTING OF BIRMINGHAM,    )
INC., corporation d/b/a
WIAT-TV,    )

    DEFENDANTS.    )

ENTERED
DEC 2 9 2000

## MEMORANDUM OF DECISION

The court has before it the September 6, 2000 motion of

defendant MG Broadcasting of Birmingham, Inc. for summary

judgment in its favor with regard to the claims of Rhonda

Underwood against it for fraud under Count Five and breach of

contract under Count Four.[1]  Pursuant to "ORDER NUMBER THREE"

entered September 18, 2000 (Document Number 97), the motion for

summary judgment as to such claims is now under submission.  The

---

    [1]  Other than the claims described above, the only remaining
claims by Rhonda Underwood in this action are against MG
Broadcasting under Title VII (Count One), Section 1981 (Count
Two), and the Equal Pay Act (Count Three).  The Title VII and
Section 1981 claims, while addressed by the September 6, 2000
motion for summary judgment, have not been the subject of any
submission order.  See the September 25, 2000 order (Document
Number 100).  The Equal Pay Act claim, also addressed by the
September 6, 2000 motion for summary judgment, was the subject of
a submission order dated December 27, 2000.

137

parties have presented to the court evidence in support of and in opposition to the motion, as well as briefs addressing the issues now under submission.[2]

## I.  Procedural History

Plaintiff Underwood and six other plaintiffs commenced this action May 20, 1999 asserting a variety of claims against MG Broadcasting, Eric S. Land, and Media General, Inc.  Media General was dismissed with prejudice by the November 2, 2000 order (Document Number 115).  Conversion and defamation claims (Counts Seven and Eight respectively) by two of the plaintiffs were dismissed September 11, 2000 (Document Number 92).  Plaintiff Underwood's fraud claim against Eric Land (Count Five) was dismissed September 11, 2000 (Document Number 92).  Following extended discovery the remaining two defendants filed motions for summary judgment on September 6, 2000 with regard to all remaining claims asserted by the plaintiffs.  Those motions, as they addressed some of the claims, were the subject of "Order Number One" and "Order Number Two," both being submission orders entered September 18, 2000 (Document Numbers 95 and 96), but

---

[2]  Such evidentiary submissions and briefs by defendants also were submitted in connection with the claims of Underwood under Counts One, Two, and Three, which are not under submission at this time.

those claims became moot with the dismissal of Media General as a

party defendant on November 2, 2000.  A third order of

submission, Order Number Three, also entered September 18, 2000

(Document Number 97), is the submission order which is applicable

to the claims which are the subject of this memorandum of

decision.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary

judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment

as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  The party asking for summary judgment always bears the

initial responsibility of informing the court of the basis for

its motion and identifying those portions of the pleadings or

filings which it believes demonstrate the absence of a genuine

issue of material fact.  Id. at 323.  Once the moving party has

met his burden, Rule 56(e) requires the nonmoving party to go

beyond the pleadings and by his own affidavits, or by the

depositions, answers to interrogatories, and admissions of file,

designate specific facts showing that there is a genuine issue

for trial.  Id. at 324.

The substantive law will identify which facts are material

and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  All reasonable doubts about the facts and

all justifiable inferences are resolved in favor of the non-

movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th

Cir. 1993).  A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.  If the evidence is merely colorable,

or is not significantly probative, summary judgment may be

granted.  Id. at 249.

The method used by the party moving for summary judgment to

discharge its initial burden depends on whether that party bears

the burden of proof on the issue at trial.  See Fitzpatrick, 2

F.3d at 1115-17 (citing United States v. Four Parcels of Real

Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the

moving party bears the burden of proof at trial, then it can only

meet its initial burden on summary judgment by coming forward

with positive evidence demonstrating the absence of a genuine

issue of material fact; i.e. facts that would entitle it to a

directed verdict if not controverted at trial.  Fitzpatrick, 2

4

F.3d at 1115.  Once the moving party makes such a showing, the
burden shifts to the non-moving party to produce significant,
probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at
trial, it can satisfy its initial burden on summary judgment in
either of two ways.  First, the moving party may produce
affirmative evidence negating a material fact, thus demonstrating
that the non-moving party will be unable to prove its case at
trial.  Once the moving party satisfies its burden using this
method, the non-moving party must respond with positive evidence
sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not
bear the burden of proof at trial can satisfy its initial burden
on summary judgment is to affirmatively show the absence of
evidence in the record to support a judgment for the non-moving
party on the issue in question.  This method requires more than a
simple statement that the non-moving party cannot meet its burden
at trial but does not require evidence negating the non-movant's
claim; it simply requires the movant to point out to the district
court that there is an absence of evidence to support the non-
moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the
movant meets its initial burden by using this second method, the

5

non-moving party may either point out to the court record

evidence, overlooked or ignored by the movant, sufficient to

withstand a directed verdict, or the non-moving party may come

forward with additional evidence sufficient to withstand a

directed verdict motion at trial based on the alleged evidentiary

deficiency.  However, when responding, the non-movant can no

longer rest on mere allegations, but must set forth evidence of

specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

MG Broadcasting of Birmingham, Inc. acquired the assets of

WBMG-TV on January 7, 1997, as an indirect wholly-owned

subsidiary of Media General, Inc.  (Land Decl. ¶ 2).  WBMG-TV

later became WIAT-TV ("WIAT").  (<u>Id.</u>).  WBMG-TV/WIAT is a CBS

affiliate in the Birmingham/Tuscaloosa/Anniston market.  Eric

Land has been President and General Manager of WBMG-TV/WIAT since

March 25, 1997.  In this capacity, he manages the day-to-day

operation of the station. (<u>Id.</u> ¶ 1; Land dep. 429).  Susan

Ellenburg is Land's Executive Assistant and the Station's Human

Resources Coordinator.

In 1997, WBMG-TV was in last place among the four major

network affiliated television stations in the local news market

(WIAT Ans. To Interrog. #14; Land dep. 95-96) and undertook an
effort to reformat its news programs, with the assistance of a
consultant company, in order to improve its ratings.   (WIAT Ans.
To Interrog. #14).   In this effort, Media General and local
management in Birmingham adopted (in late November 1997) and
implemented a plan to remake the station's news operation,
including (1) shutting down the station's news programming in
January 1998 and the first week of February 1998 in order to
enact the changes; (2) relaunching the entire station with the
new call letters WIAT-TV, a new set, new graphics, etc. on
February 5, 1998; and (3) relaunching the news program in a new
"News for Busy People" format, under which only anchors (not
reporters) would be seen on air and short news segments would be
provided.   (Id.).   Since the relaunch, WIAT's ratings, revenue,
and market share have increased; it has received industry awards
as well as positive public feedback.   (Land dep. 97-98, 132, 137-
39, 142).

On August 27, 1996, prior to the purchase of the Station by
MG Broadcasting and prior to the implementation of the new
format, plaintiff began employment with WBMG, the predecessor of

7

WIAT.[3]  (Underwood dep. 48-49).  Plaintiff was interviewed and
hired by Willy Walker, then-News Director of the Station.
Plaintiff was hired for a part-time associate producer position
at $7.25 per hour.[4]  (Underwood dep. 14, 39-40, 156, 177, 390).
Walker assured plaintiff that she would have the opportunity to
learn to produce television programs from the beginning of her
employment.  (Underwood dep. 39-40, 177-78).  While employed at
WBMG/WIAT, Walker was plaintiff's immediate supervisor until
Walker left the Station in February 1998.  (Id. 182-83).
Plaintiff had no written contract of employment at any time
during her employment with the Station.  (Id. 538).  Plaintiff
was paid $7.25 per hour until her promotion in October of 1997.

    When plaintiff started work with the Station, she received a
copy of the Station's policies and procedures manual, (Underwood
dep. 101),  which stated that "the contents of this manual do not
constitute the terms of a contract of employment; that employment

---

    [3] Prior to her employment with WBMG/Channel 42, plaintiff
was employed by NBC 13 in Birmingham.  Plaintiff had never
produced any complete television programs while at NBC.
(Underwood dep. 149-52).

    [4] According to plaintiff, Walker verbally promised plaintiff
that she would be promoted to full-time status, including full-
time wages and benefits, and would be allowed to produce on a
full-time regular basis within one month of being hired.
(Underwood dep. 539, 541, 548-49).

with defendant is on an "at-will basis," may be terminated at any
time by either party, and any oral statements to the contrary by
an agent of defendant are "invalid and should not be relied upon
by prospective or existing employees." (Def. Exh. 10, Policy &
Procedure Manual, Introduction).   Plaintiff signed an
acknowledgment that she received the Manual, and plaintiff read
the Manual. (See Def. Exh. 9, Acknowledgement; Underwood dep.
296, 312-13).

The Station's evaluation policy provided for employee
performance evaluations on the 45th and 90th days of employment
and annually thereafter. (Def. Exh. 10, Manual, Policy E-5).
Evaluations affect decisions with regard to retention, promotion,
and raises. (Ellenburg dep. 48, 73-74).   Because of her hire
date, plaintiff was in the July annual merit review cycle.
Plaintiff did not receive written performance evaluations on the
45th and 90th days of her employment with WBMG.

In September 1996, plaintiff began learning to produce
television programs. Walker trained plaintiff to be a producer,
and plaintiff also received "on the job" training. (Underwood
dep. 156, 300-02). During the week of September 16, 1996, when
plaintiff was not yet a full-time producer, plaintiff produced
her first complete television program, a broadcast of "Birmingham

This Morning." (Id. 179-80). Plaintiff had the opportunity to produce many television programs at WBMG (Id. 149-52). Also in September of 1996, Tom Allen became full-time producer of the "Birmingham This Morning" show. (Def. Exh. 1, Pl.'s Ans. to Def.'s Interrog. No. 6; Underwood dep. 180). (Underwood had been employed by WBMG as a producer since February of 1992. (Land decl. ¶ 10)).

On October 5, 1996, Ken Cohen was hired as a producer at WBMG. (Land decla. ¶ 11). Cohen was appointed to produce the morning program in January 1997.[5] (Def. Exh. 1, Pl.'s Ans. to Def.'s Interrog. No. 6; Underwood dep. 498). When Cohen was appointed, plaintiff had been producing the morning program on a part-time, temporary basis. (Def. Exh. 1, Pl.'s Ans. to Def.'s Interrog. No. 8).

In August 1997, Ken Cohen, a full-time producer, resigned from his employment with the Station. (Land decl. ¶ 12).

In October 1997, plaintiff was promoted to a full-time producer position; her annual salary was increased to $20,000,

---

[5] Plaintiff contends that Cohen took over the producing duties for the morning program from plaintiff, after Walker had told plaintiff that plaintiff would get to produce the morning program. (Def. Exh. 1, Pl.'s Ans. to Def.'s Interrog. Nos. 6 & 8; Underwood dep. 562-63).

and she received full benefits.[6]  (Underwood dep. 162, 226-27, 390, 540-41; Johnson decl. ¶ 26).  John Mecham, Executive Producer, raised plaintiff's salary to $20,000 and directed plaintiff to produce the weekend news shows.  (Underwood dep. 226-27, 550).

In February 1998, when Walker left the Station, Al Blinke became interim News Director and plaintiff's immediate supervisor.  Micah Johnson was hired as the News Director in March of 1998 and was plaintiff's immediate supervisor until her resignation two months later.  (Johnson decla. ¶ 1; Underwood dep. 183).

On or around March of 1998, plaintiff met with Land, Ellenburg, and Johnson. (Land dep. 383; Ellenburg dep. 149-50). During this meeting, plaintiff wanted to express issues with staffing and equipment needs for her weekend assignment.  (Land dep. 383).  Plaintiff also raised issues regarding her pay.[7]

---

[6] Plaintiff claims that she was forced to accept a "menial" salary of $20,000 for a producer's position or else stay part-time in October 1997.  (Underwood dep. 559-60).

[7] Plaintiff maintains that, on this and one other occasion, Land promised that the Station would "take care of" plaintiff and that he would look into getting plaintiff more money and into hiring additional help for the weekend shows.  (Underwood dep. 43-44, 227, 457-58, 573).

Following this meeting, Land requested that Ellenburg research plaintiff's salary; Ellenburg determined that plaintiff was being paid more than the entry level salary and within the salary range for the full-time producer position that plaintiff filled. (Ellenburg dep. 152-54).  Based on this information, Land determined that plaintiff's salary was appropriate.  (<u>Id.</u>).

On or about May 5, 1998, plaintiff provided a two-week notice of her resignation.  (<u>See</u> Def. Exh. 7, Resignation Letter; Underwood dep. 49, 303, 472).  In her letter of resignation, plaintiff stated that it was in her "best interest to pursue other opportunities outside this business."  Plaintiff's last day of employment with the Station was May 14, 1998.  (<u>Id.</u>). Plaintiff made the decision to leave the Station in April 1998. (Underwood dep. 52-53).  At the time of her resignation, she had accepted a job with FOX 6, a competing television station in Birmingham.  (<u>Id.</u> 53-54, 304-05).

Plaintiff was due to receive an annual performance evaluation in July of 1998; she resigned employment with the station prior to the time this evaluation was to be completed.

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains the following claims now under consideration: (1) fraud (Count Five) and (2) breach of

contract (Count Four).  Defendants' motion for summary judgment
asserts that there is no genuine issue as to any material fact
and that (1) no valid contract existed between plaintiff and
defendant; (2) plaintiff has failed to allege a prima facie case
of fraud; and (3) plaintiff's fraud claim is barred by the
Statute of Limitations.  Plaintiff maintains that genuine issues
of fact remain as to her claims.  The Court will address
plaintiff's claims separately.

### A.  Fraud Claim

Plaintiff claims fraud with regard to an alleged promise,
made by Walker at the time of plaintiff's interview, of full-time
employment as a producer, full-time wages, and full benefits
within one month of being hired by the Station.[8]  (See Pl.'s Br.

---

[8] Although in her brief plaintiff argues only this ground
for her fraud claim, in her response to Defendants' Interrogatory
No. 8, plaintiff stated her claims of fraud to also include:  (1)
being passed over for the producer position in September 1996,
after being told she was Walker's choice to take over the morning
show (although the decision was made by then-General Manager
Hoyle Broom, not by Walker); (2) the producer position was given
to Cohen in January 1997, after plaintiff had been producing the
morning show on a part-time, temporary basis; and (3) Land
telling plaintiff around March of 1998, and on one other
occasion, that he would look into getting plaintiff a raise and
that he would make sure she got the help she needed for the
weekend shows.  Plaintiff has pointed to no evidence to establish
a prima facie case of fraud with respect to these additional
allegations.  Furthermore, plaintiff's allegations relating to
events in September 1996 and January 1997 are barred by Alabama's

18).  Plaintiff claims that she was damaged as a result of not being promoted to full-time employment status, with full-time salary and benefits, until one year after she was hired by the Station.  (<u>Id.</u> 18-19).

Defendants argue that plaintiff's fraud allegations cannot sustain a claim for fraud because:  (1) plaintiff has failed to allege the elements of a prima facie case of fraud; and (2) any fraud discovered more than two years prior to the filing of plaintiff's Complaint on May 21, 1999 is barred by Alabama's two-year statue of limitations under Ala. Code § 6-2-38.  (<u>See</u> Def.'s Br. 52-56).

In order to establish a prima facie case of fraud, the plaintiff must prove the following four elements: (1) that defendant made a false statement regarding a material fact to the plaintiff; (2) that defendant made the misrepresentation willfully, with the <u>intent to deceive the plaintiff and with a present intent not to perform</u>;[9] (3) that plaintiff reasonably

_____

Statute of Limitations for fraud claims.  <u>See</u> ALA. CODE § 6-2-38 (1975).  Defendant MG Broadcasting is therefore entitled to summary judgment in its favor as to these fraud claims by plaintiff Underwood against it.

[9] Under Alabama law, "fraud" can also be a misrepresentation of an *existing* fact made recklessly, negligently, or innocently. <u>See</u> <u>Hughes</u>, 670 So. 2d 882 at 888. "However, the law places a

14

relied on the misrepresentation; and (4) that plaintiff suffered some damage or injury as a proximate result of his reliance on the misrepresentation. See Hughes v. Hertz Corp., 670 So.2d 882, 885 (Ala. 1995). Plaintiff has alleged fraud based on an alleged promise by Walker at the time of plaintiff's interview in 1996 that plaintiff would be promoted to full-time status as a producer within one month of being hired by the Station. The Court finds that plaintiff has failed to establish a prima facie case of fraud.

First, the alleged representation at issue was a promise about what defendant might do in the future. Plaintiff has not pointed to evidence to establish that defendant MG Broadcasting, through its employee, Walker, made a representation that was false nor that the alleged representation at issue was made with an intent to deceive plaintiff and with a present intent not to

---

heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future," National Sec. Ins. Co. v. Donaldson, 664 So. 2d 871, 876 (Ala. 1995), in which case the plaintiff must additionally show that, "at the time of the alleged misrepresentation (the promise), the defendant did not intend to do the act or acts promised and intended to deceive the plaintiff." McGriff v. Minnesota Mut. Life Ins. Co., 127 F.3d 1410, 1414 (11th Cir. 1997); see also Russellville Prod. Credit Assoc. v. Frost, 484 So. 2d 1084, 1087 (Ala. 1986); Kennedy Electric Co. v. Moore-Handley, Inc., 437 So. 2d 76 (Ala. 1983).

perform.   Plaintiff contends that Walker promised her that she
would receive full-time status, with full-time wages and full
benefits, within one month of being hired at the Station and that
she would have the opportunity to learn to produce and would be
able to produce on a full-time basis.   Plaintiff has testified
that she does not claim that Walker ever lied to her.   (Underwood
dep. 40, 456-58).   Furthermore, the evidence shows that plaintiff
did become a full-time producer, with a full-time salary of
$20,000 and full benefits, and that she did produce television
programs for WBMG/WIAT on a full-time basis from October 1997
until her resignation in May 1998.   Plaintiff does not point to
any evidence to demonstrate an intent to deceive or a present
intent not to perform.   (See Pl.'s Br. 18-19).

     Second, plaintiff has failed to demonstrate that she
reasonably relied on the alleged misrepresentation.   Reliance
requires plaintiff to demonstrate that her belief in the fact
misrepresented by the defendant caused her to take some specific
action or refrain from taking some specific action; that
plaintiff would have acted differently had she known the truth.
Such reliance must be reasonable:   whether an ordinarily prudent
person, situated similarly to plaintiff, and exercising due care,
would have relied on the misrepresentation under all of the

surrounding circumstances.  See Foremost Ins. Co. v. Parham, 693

So. 2d 409 (Ala. 1997) (citing Torres v. State Farm Fire &

Casualty Co., 438 So. 2d 757 (Ala. 1983)).  Plaintiff has

testified that she did not have a written contract and that

Walker never told plaintiff that her employment could not be

terminated or discussed with plaintiff the notice plaintiff must

give prior to a resignation.  (Underwood dep. 551, 553).  Also,

plaintiff acknowledged receiving and reading defendant's policies

and procedures manual which contained provisions stating that

employment with defendant is on an "at-will basis," and any oral

statements to the contrary by an agent of defendant are "invalid

and should not be relied upon by prospective or existing

employees."  (Personnel Policy Manual, Introduction).   In

addition, plaintiff remained employed with WBMG for one year

after the time she was allegedly to have received full-time

status, until she was, in fact, promoted to full-time producer in

October of 1997.  Given these facts, plaintiff cannot now

successfully argue that she reasonably relied on any oral

representation that she would be a full-time producer within one

month of her hire,[10] and that she was injured thereby.  Any such

_____

[10] Plaintiff cannot successfully argue that such
representation constituted a contract of employment.  Any such

17

reliance by plaintiff would not have been reasonable under these circumstances.

Furthermore, the alleged representation occurred prior to plaintiff's employment with WBMG, which began in August of 1996. Plaintiff alleges that she was to receive full-time status one month later, September 1996.  Plaintiff's discovery of this alleged fraud occurred more than two years prior to the filing of her Complaint on May 21, 1999.  Therefore, under Ala. Code § 6-2-38, plaintiff's fraud claim would be barred by the Statute of Limitations.

For the foregoing reasons, defendant MG Broadcasting is entitled to summary judgment in its favor as to all of plaintiff's fraud claims against it.

### B.  Breach of Contract Claim

Plaintiff alleges breach of contract based upon the same ground as her fraud claim:  an alleged promise of full-time employment, wages, and benefits within one month after she was

---

representation could have at most constituted only employment at-will, because plaintiff has failed to demonstrate that there was an a clear and unequivocal offer of permanent employment (lifetime employment or employment of a definite duration) or that he provided substantial consideration for such alleged contract separate from the services to be rendered under his original February 1996 contract.  See Wesson v. Huntsman Corp., 206 F.3d 1150, 1153 (11th Cir. 2000).

hired by the Station.  Additionally, plaintiff claims breach of contract based upon the lack of performance evaluations on the 45th and 90th days of her employment.  (Pl.'s Br. 14-15). Plaintiff maintains that a question of fact exists as to whether she was damaged by not receiving the 45- and 90-day evaluations, relying upon testimony of Susan Ellenburg that evaluations affect decisions regarding retention, promotion, and raises.  (Id.).

Defendant argues (1) that no valid contract existed--the alleged verbal contract contained no specific terms; and  (2) that plaintiff has failed to allege why her failure to receive the 45- and 90-day performance evaluations is material, when she has not alleged that her work performance is at issue, or to allege what injury she suffered.  (Def.'s Br. 50-52).

A breach of contract is defined as a "failure, without legal excuse, to perform any promise which forms the whole or part of a contract."  In order to establish a breach of contract, plaintiff "must prove: (1) the existence of a valid contract binding the parties in the action, (2) [plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages."  Mann v. Bank of Tallassee, 694 So. 2d 1375, 1380 (Ala. Civ. App. 1996) (citations omitted).

19

To establish a breach out contract claim, plaintiff must first prove that a valid contract existed between plaintiff and defendant MG Broadcasting.  The elements of a contract include: (1) offer, (2) acceptance, (3) consideration, and (4) mutual assent to essential terms.  See Atkins v. GE Capital Mortgage Servs., 993 F. Supp. 1406, 1415 (M.D. Ala. 1998).  Under Alabama law, an "'employment contract[] without a fixed term of employment [is] terminable at the will of either party and may be terminated for good cause, bad cause, or no cause at all.'" Chastain v. Kelly-Springfield Tire Co., 733 F.2d 1479, 1482 (11th Cir. 1984) (quoting Bates v. Jim Walter Resources, Inc., 418 So. 2d 903, 905 (Ala. 1982)); see also Ex Parte Michelin North America, Inc., No. 1990615, 2000 WL 1603789, at *2 (Ala. Oct. 27, 2000).

The evidence shows that an offer of employment as a part-time associate producer at a wage of $7.25 per hour, with the opportunity to learn to produce television programs and to become a full-time producer with full-time salary and benefits, was made by Walker and accepted by plaintiff.  The evidence shows that plaintiff was in fact paid $7.25 per hour as a part-time associate producer until she was promoted to full-time producer in October of 1997, at which time she received a salary of

$20,000 and full benefits.  The evidence also shows that plaintiff was trained as a producer and had several opportunities to produce television programs during her employment with the Station.  Thus, the only term that is in dispute is whether plaintiff was to receive full-time status (and the accompanying salary, benefits, and opportunities) within one month of being employed with defendant.

The evidence indicates that plaintiff's employment with the Station was on an at-will basis.  (See Underwood dep. 547-48). Plaintiff testified that the duration of her contract was "until [she] left [the Station]," (id. 539),  and that Walker never told plaintiff that her employment could not be terminated.  In addition, the Station's Policies and Procedures Manual, which plaintiff read and received, clearly provides for an at-will employment relationship, stating:  "In the absence of a specific written agreement, employees are free to resign at any time, and the Company reserves the right to terminate employment for any reason." (Def. Exh. 10, Policy & Procedure Manual, policy T-2). It clearly stated that the terms of the manual do not constitute a contract of employment,[11] that either party is free to

_____

[11]  While the Alabama Supreme Court has held that a policy contained in an employee manual can become a binding promise once

21

terminate the employment relationship at any time, and that an employee should not rely on any oral representations to the contrary.  (Id., Introduction).

Plaintiff's breach of contract claim fails, because she has not demonstrated that a valid contract existed with respect to her promotion to full-time producer status within one month after she was hired by the Station. The oral contract alleged by plaintiff does not specify the duration of the employment relationship.  Under Alabama law, an employment relationship for an indefinite time, such as in the case at bar, is considered "at-will" employment, wherein either party is free to terminate the relationship at any time for any reason.  The alleged promise, made at the time of plaintiff's interview, related to something that defendant was to do in the future.  This executory

---

it is accepted by the employee through his continuing to work when he is not required to do so (where the language used is specific enough to constitute an actual offer rather than a mere general statement of policy), it has also made clear that "if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, [it] is free to so state in the handbook." Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725 (Ala. 1987) (quoting McCluskey v. Unicare Health Facility, Inc., 484 So. 2d 398, 400 (Ala. 1986) (holding handbook provisions not enforceable against employer where handbook expressly stated that Handbook and policies therein "'do not in any way constitute, and should not be construed as a contract of employment . . . or a promise of employment.'")).

oral promise is unenforceable because the alleged underlying employment contract, being terminable at-will, is unenforceable by plaintiff and cannot serve as the basis of a breach of contract claim.[12]

As to any alleged violation of the Station's policies regarding performance evaluations, the introduction to the manual clearly states that the contents of the manual do not constitute a contract of employment.  It is undisputed that plaintiff resigned from her employment with defendant prior to the date upon which she would have been due to receive her July 1998 annual merit review.  Plaintiff did not receive 45- and 90- day reviews; however, because the manual by its terms is not a contract of employment, plaintiff cannot establish a breach of contract claim on this basis.  Furthermore, plaintiff has not shown any legally compensable injury as a result of not receiving the 45-day and 90-day performance evaluations.  The evidence shows that plaintiff was promoted after approximately one year of employment with the Station and that plaintiff received a raise and full benefits with this promotion.  Plaintiff has not made

_____

[12] Any claim by plaintiff that a valid oral contract was formed when Mecham promoted plaintiff to full-time producer and raised her salary to $20,000 is similarly unenforceable.  (See Underwood dep. 550, 553).

performance an issue in her breach of contract claim, and
plaintiff voluntarily left employment with the Station in May of
1998.  In addition, when plaintiff's 45- and 90-day evaluations
would have been due, plaintiff was employed by and would have
received such evaluations from WBMG/her then-employer, the
predecessor of MG Broadcasting, which is not a party to this
case; such evaluations would have been due prior to the date on
which MG Broadcasting acquired the assets of WBMG/WIAT.

     For the foregoing reasons, defendant MG Broadcasting is
entitled to summary judgment in its favor as to plaintiff's
breach of contract claims against it.

     In summary, the Court finds that no material issues of fact
remain and that defendant MG Broadcasting of Birmingham, Inc. is
entitled to judgment as a matter of law as to all fraud claims
asserted against it by plaintiff Rhonda Underwood under Count
Five and as to all breach of contract claims asserted against it
by plaintiff Rhonda Underwood under Count Four.

     As noted earlier, this action involves separate claims by
seven plaintiffs, which claims are largely individual to each
plaintiff and are predicated on facts unique to each plaintiff.
One of the problems associated with joining separate claims of
seven plaintiffs in an action is the difficulty for the attorneys

(and particularly counsel for plaintiffs) to give proper evaluation and advice to their clients with regard to the claims of each plaintiff and be able to disregard the impact on the case as a whole of a settlement between the defendant and one plaintiff.  Another problem with such a joinder is the temptation to include in the complaint claims that have little merit or no merit at all.[13]  The Court this day is disposing of additional claims of Rhonda Underwood which had little or no merit, leaving only her Title VII and § 1981 claims under Counts One and Two and her Equal Pay Act claim under Count Three.  The Court strongly urges Underwood and MG Broadcasting, and their attorneys, quickly to engage in settlement discussions or mediation with regard to those claims and to do so without considering the claims of the remaining plaintiffs in this case.  To increase the chances of a quick settlement of Underwood's claims, the Court determines that there is no just reason for delaying the entry of a partial final judgment under Fed. R. Civ. P. 54(b) embracing the claims of Rhonda Underwood against MG Broadcasting resolved by this Memorandum of Decision and will direct the entry of such a

---

[13] For example, the claims removed from this case by the orders entered September 11, 2000 (Document Number 92) and November 2, 2000 (Document Number 115).

25

judgment in favor of defendant under Count Four and Count Five.

A separate order will be entered.

    DONE this ___29th___ day of December, 2000.


                              James H. Hancock
                              SENIOR UNITED STATES DISTRICT JUDGE